**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-CR-00019-2 |
| | ) | |
| ARMANDO PAULINO ESTUDILLO, | ) | |
| Defendant. | ) | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The Defendant, who has a history of illegal entry himself, paid a co-defendant to try to have his romantic partner smuggled into the United States from Canada. The attempt failed. Members of the U.S. Border Patrol intercepted Y.G.F., the Defendant's partner, and three other aliens who attempted to illegally enter the United States with her. Even though he received a refund for the failed attempt, the Defendant has not escaped consequences. An investigation eventually revealed his involvement, leading to his arrest, imprisonment, and likely removal from the United States.

Balancing the Defendant's recidivism, conduct, and decision to plead guilty, the Government respectfully requests a sentence of time served, which will be a time longer than the advisory guidelines sentence in this case.

**<u>Offense Conduct & Procedural History</u>**

A. *Offense Conduct*

In early April 2025, the Defendant was in a romantic relationship with Y.G.F. PSR ¶ 9. Y.G.F. was a citizen of Mexico with no authorization to enter the United States. *Id.* The Defendant knew that Y.G.F. had no such authorization. *Id.* He decided to try to bring Y.G.F. into the United States from Canada, and the Defendant worked with his codefendant, Jose Ignacio De La Cruz De La Rosa, a/k/a, "Nacho," to do so. *See* PSR ¶ 8.

On April 9, 2025, the Defendant told Y.G.F. that he and another individual were going to

meet "Nacho" and pay him for Y.G.F.'s border crossing. PSR ¶ 10. The Defendant also told Y.G.F. that the smuggler would bring her to "un rancho de Vermont," or a Vermont farm, after she crossed the border from Canada into the United States. *See id.* Had the illegal crossing been successful, the Defendant would have then met Y.G.F. *See* PSR ¶ 11.

The Defendant paid $2,000 in cash on April 9, 2025. PSR ¶ 11. Jose Ignacio De La Cruz De La Rosa, a/k/a, "Nacho," received the payment at Yaya's Market and Deli in Twin Mountain, New Hampshire, that same day. *See id.* The Defendant would later tell Y.G.F. that he spent $5,000 in total and that he had another $3,000 ready to facilitate her crossing. *See* PSR ¶ 12.

The next day, the Defendant sent the phone number for his codefendant, "Nacho," to Y.G.F. PSR ¶ 13. The Defendant, Y.G.F., and "Nacho" began to coordinate Y.G.F.'s border crossing, and the three exchanged numerous text messages over the next few days. *See* PSR ¶¶ 13–16. They exchanged details about where Y.G.F. was staying in Canada and how she might cross the border. *See* PSR ¶ 16. The Defendant also told "Nacho" about another failed attempt that Y.G.F. had made to cross the border illegally, and he sent "Nacho" a depiction of a foot guide. *See* PSR ¶ 15.

On April 18, 2025, individuals picked Y.G.F. at a location in Montreal, Canada, and drove her to an area near the international border. PSR ¶ 17. She, A.I.H., two other aliens, and a foot guide headed south through the woods. *See id.* The group was walking along Richford Road in Richford, Vermont, when members of the U.S. Border Patrol arrested Y.G.F, A.I.H. and the two other aliens. *See id.* Y.G.F. admitted her conduct and gave law enforcement consent to search her cell phone. *See id.* The Defendant later asked "Nacho" to return his $2,000 for the smuggling attempt, and he received a refund. PSR ¶ 18.

B. *Procedural History*

Law enforcement arrested the Defendant on April 1, 2026, after a grand jury charged him in two counts of a nine-count indictment. *See* Second Redacted Indictment, ECF No. 20; Arrest Warrant

Return, ECF No. 28. The Defendant made his initial appearance that same day. Minute Entry, ECF No. 23. The Court ordered the Defendant detained pending further proceedings. *See id.*

Pursuant to a plea agreement, the Defendant pleaded guilty to Count 1 of the Indictment, which charged him with conspiring to bring aliens into the United States, on August 4, 2026. Plea Agreement, ECF No. 42; Minute Entry, ECF No. 46.

In the plea agreement, the Government agreed, *inter alia*, to recommend a sentence within the advisory guidelines range. Plea Agreement, ECF No. 42 at ¶ 11(c).

If the sentencing hearing occurs as scheduled on October 26, 2026, the Defendant will have spent around six months and twenty-six days in custody following his arrest in this case.

**<u>Guidelines Calculations</u>**

The Probation Office correctly calculated the advisory sentencing guidelines range at 0–6 months. PSR ¶¶ 22–31, 33–38, 57. The Defendant's total adjusted offense level will be 8, PSR ¶ 31, and the Defendant's criminal history category is I, PSR ¶ 38. No enhancements appear to apply in this case. The advisory guidelines sentencing range in this case is therefore 0–6 months of incarceration.

**<u>The Government's Request Under the § 3553(a) Factors</u>**

The Government respectfully asks the Court to impose a sentence of time served, as the Defendant has already spent more time incarcerated than the high-end of the anticipated advisory guidelines range in this case. This sentence is sufficient but no greater than necessary to recognize the seriousness of the Defendant's crime and to serve as specific and general deterrence.

As the relevant statutes provide, the court shall impose a sentence sufficient, but no greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Those purposes include the need: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining the sentence, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the sentencing range as calculated under the applicable Sentencing Guidelines; any pertinent policy statement from the United States Sentencing Commission; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The Defendant committed a serious crime. *See* 18 U.S.C. § 3553(a)(2)(A). He conspired to bring Y.G.F., an alien, into the United States illegally, and the Defendant made multiple attempts to bring her here. Along the way, the Defendant's payments provided the financial incentive that fuels illegal border crossings between Canada and the United States and supports criminal networks. Those criminal networks, in turn, help dangerous people evade detection and enter the United States. Crimes like the Defendant's are therefore serious, even if the Defendant were less involved in the larger smuggling networks. Recognizing that seriousness with a term imprisonment will deter others from spending money to break the nation's immigration laws. *See* 18 U.S.C. § 3553(a)(2)(B).

Relatedly, the Defendant's history and characteristics warrant a sentence at the higher end of the guidelines range to deter this Defendant, specifically, from further criminal conduct. *See id.* Although older, the Defendant has two prior convictions for illegal entry into the United States, in violation of 8 U.S.C. § 1325, as well as a third arrest for illegal entry. *See* PSR ¶¶ 35, 36, and 41. The Defendant is a Mexican citizen, *see* PSR ¶ 42, and his arrest in New Hampshire indicates that he yet again illegally entered the United States. This history, coupled with his conspiracy to smuggle Y.G.F. into the United States, shows a repeated disregard for the immigration laws. The Defendant needs to be deterred from breaking those laws again. What will be sentence of longer than six months,

particularly when considered along with the Defendant's felony conviction and likely removal from the United States, will be sufficient but no greater than necessary to provide that deterrence.

At bottom, the Defendant paid to have a romantic partner, who was an alien, illegally smuggled into the United States. He tried to have her brought across border from Canada several times before she was caught in her last attempt. This conduct, the Defendant's background, and the circumstances of this offense all support a significant period of incarceration. *See* 18 U.S.C. § 3553(a)(2)(A).

**Conclusion**

For all of these reasons, the Government respectfully asks the Court to impose a time served sentence.

Dated at Burlington, in the District of Vermont, October 19, 2026.

Respectfully submitted,

UNITED STATES OF AMERICA

JONATHAN A. OPHARDT
First Assistant United States Attorney

By: */s/ Joshua L. Banker*

Joshua L. Banker
Assistant U.S. Attorney
11 Elmwood Avenue, 3rd Floor
P.O. Box 570
Burlington, VT 05402-0570
(802) 651-8217
Joshua.Banker@usdoj.gov